**UNITED STATES of America**

v.

**Harry PELTZ, Michael Peller, and Anthony Torraco, Defendants.**

United States District Court
S. D. New York.

Dec. 1, 1955.

Paul W. Williams, U. S. Atty. for Southern District of New York, New York City, Walter L. Stratton, New York City, of counsel, for United States of America.

Joseph Leary Delaney, New York City, Lee Feltman, New York City, of counsel, for defendant Harry Peltz.

HERLANDS, District Judge.

Defendant Harry Peltz is under indictment and awaiting trial on a charge of illegally selling narcotics. Before us for consideration is a motion by this defendant for an order directing the United States Attorney to permit this defendant or his attorney to inspect and copy the transcript of the statement given by him to an Assistant United States Attorney.

The moving affidavit, which is sworn to by this defendant himself, states: "My attorney has advised me that in order to prepare adequately for trial, it is necessary for either myself or him to inspect and copy or photograph such statement. Although I remember the contents of such statement, in substance, I could not advise my attorney of the contents of such statement, word for word." This is the only assertion defendant offers in support of his motion.

The opposing affidavit by an Assistant United States Attorney alleges that the requested statement is a question and answer statement, made by this defendant at the office of an Assistant United States Attorney on June 30, 1955, immediately prior to such defendant's arraignment. The opposing affidavit also states that the question and answer statement has been reduced to writing by the Government's stenographer, who was present at the time it was made; that the statement is not signed by defendant Peltz; that at no time during the course of the interrogation did this defendant confess his guilt of any of the crimes charged thereafter in the indictment in the case, and that this defendant denied any involvement in the sale of narcotics alleged in the indictment.

Determinative of the disposition of defendant's motion are Rules 16 and 17 (c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Defendant's argument on behalf of his motion is based principally on United States v. Peace,[1] a recent decision in this district, holding that under Rule 16, defendant was entitled to pre-trial discovery and inspection of his signed statement made before post-office inspectors.

With great deference to my learned colleague Judge Weinfeld, who decided the Peace case, I am constrained to adopt a contrary interpretation of Rule 16. The views expressed in this opinion are predicated upon the legislative history of Rule 16, the judicial authorities construing that Rule, and the currently dominant public policy applicable to pre-trial discovery in criminal proceedings.

To determine whether pre-trial discovery and inspection should be ordered under Rule 16 in any particular case, it is necessary to consider two questions: (1) Are the requested materials or items within the categories as specified and defined in Rule 16? (2) If so, should the court, in view of all the circumstances, exercise its discretion to permit discovery and inspection of the requested materials and items?

An oral statement of a defendant, reduced to writing by a Government stenographer, does not come within the provisions of Rule 16. At early common law, the inspection of the prosecution's documentary evidence could not be had by the accused before trial.[2] That this

---

1. D.C.S.D.N.Y.1954, 16 F.R.D. 423.
2. Rex v. Holland, 4 T.R.(K.B.) 691, 100 Eng.Rep.Full R. 1248 (1792). See 6 Wigmore, Evidence, 3d Ed.1940, pages 372–398, 475–476. The opinion by Cardozo, C.J., in People ex rel. Lemon v. Supreme

aspect of our English common law heritage carried over and flourished in this country is shown by the fact that, at the time of the adoption of the Federal Rules of Criminal Procedure in 1946, virtually all the common law jurisdictions in this country still followed the rule laid down in Rex v. Holland. The denial of pre-trial discovery and inspection in criminal cases had been held to extend even to a defendant's written confession.[3]

The status of discovery and inspection in criminal proceedings in the federal courts at the time of the adoption of the Federal Rules of Criminal Procedure was not subject to sharp definition. The Advisory Committee Note to Rule 16 states, in part:

"Whether under existing law discovery may be permitted in criminal cases is doubtful, United States v. Rosenfeld, 2 Cir., 57 F.2d 74,—certiorari denied [Nachman v. U. S.]

286 U.S. 556, 52 S.Ct. 642, 76 L.Ed. 1290. The courts have, however, made orders granting to the defendant an opportunity to inspect impounded documents belonging to him, United States v. B. Goedde & Co., D.C.E.D.Ill., 40 F.Supp. 523, 534. *The rule is a restatement of this procedure.*" (Emphasis supplied.)[4]

This strongly indicates that it was not the intent of the draftsmen of Rule 16 to include copies of defendant's statements and confessions within the Rule.

That Rule 16 was not intended to give a defendant an unlimited right of discovery and inspection is made even clearer by the fact that the precise, restrictive language of the Rule is the end result of a drafting process whereby originally broadly-worded provisions were whittled down, further and further, with each successive redrafting of the Rule.[5]

Court, 1927, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200, contains an extended review of the prior Anglo-American history. See Dession, The New Federal Rules of Criminal Procedure: II (1947) 56 Yale L.J. 197, 219. In Shores v. United States, 8 Cir., 1949, 174 F.2d 838, 843, 11 A.L.R. 2d 635, the court said: "The common law recognized no right of discovery in criminal cases." See Pre-Trial Discovery of Criminal Defendant's Confession (1953) 53 Columbia L.Rev. 1161; Pre-Trial Disclosure in Criminal Cases (1951) 60 Yale L.J. 626.

3. Criminal Law—Written Confessions— Pre-trial Inspection by Counsel For Accused, 20 Tulane L.Rev. (1945) 133; Davis v. State, 1925, 99 Tex.Cr.R. 517, 270 S.W. 1022; State v. Yeoman, 1925, 112 Ohio St. 214, 147 N.E. 3; Williams v. State, 1940, 143 Fla. 826, 197 So. 562.

4. Notes to the Rules of Criminal Procedure for the District Courts of the United States, Rule 16, page 15.

5. Wording of Rule 16 (then Rule 19) in first preliminary draft (1943):

"Rule 19. Discovery and Inspection. Upon motion of the defendant at any time after the filing of the indictment or information and after the defendant has been taken into custody the court may order the attorney for the government to permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated books, papers, documents, or tangible objects, not privileged, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place, and manner of making the inspection and taking the copies or photographs and may prescribe such terms and conditions as are just."

Wording of Rule 16 (then Rule 18) in second preliminary draft (1944):

"Rule 18. Discovery and Inspection. Upon motion of a defendant at any time after the filing of the indictment or information and after he has been arraigned, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or constituting evidence in the proceeding, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

Wording of Rule 16 in final draft and as finally adopted (1945):

Thus, the first preliminary draft allowed discovery of "any" designated books, papers, documents or tangible objects "not privileged." The second preliminary draft limited the scope of permissible discovery to those designated materials "obtained from or belonging to the defendant or constituting evidence in the proceeding." The Attorney General objected to the wording of this provision as still being too broad. As a result of that objection, the scope of permissible discovery was still further narrowed by eliminating the words "constituting evidence in the proceeding" and substituting (in the final draft) the phrase "or obtained from others by seizure or by process".[6]

Secondly, it was the impression of at least some of the members of the Advisory Committee that Rule 16 was directed to the type of case where large numbers of documents had been seized or impounded by the Government and which were necessary to the defendant for a preparation of his case.[7]

This court is also impressed by the fact that every reported case that has analyzed the problem of the applicability of Rule 16 to statements and confessions of the defendant, has reached a conclusion contrary to that of the Peace case.[8]

The first case to consider the problem, United States v. Black,[9] reached its conclusion (1) by construing Rule 16 as embracing only those documents and objects which were in existence and in the custody of the defendant or other person prior to the time that the Government obtained them, and (2) by reading the

---

"Rule 16. Discovery and Inspection

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

6. James M. McInerney, First Assistant in the Criminal Division, Department of Justice, at the Institute on Federal Rules of Criminal Procedure, Catholic University of America, School of Law (1945) 5 F.R.D. 156, 161: "As originally drafted, this Rule also provided that the defendant might obtain or might examine material constituting evidence in the proceedings, but the Attorney General indicated some slight displeasure with that invitation to fishing expeditions, and the Advisory Committee struck it out in the third draft."

7. See comments by Hon. G. Aaron Youngquist (member of the Advisory Committee) made at Institute Proceedings, New York University School of Law, February 15, 1946, reported in Fed.R.

Crim.P., New York University School of Law, Institute Proceedings, Vol. VI, page 166. (See also remarks of Hon. George Z. Medalie, another member of Advisory Committee, ibid., page 197, regarding the practice of the Anti-Trust Division.)

4 Barron & Holtzoff, Federal Practice and Procedure (Rules Edition) page 124: " * * * it perhaps curbs any tendency on the part of government attorneys to deny to defendants access to documents which would have been available to the accused had they not been impounded by the government."

See United States v. Chandler, D.C. D.Mass.1947, 7 F.R.D. 365, 365–366.

8. See Appendix.

9. D.C.N.D.Ind.1946, 6 F.R.D. 270, at page 271, the court said:

"As I construe Rule 16, it embraces only those documents and objects which were in existence and in the custody of a defendant or other person prior to the government's obtainment of them by process or seizure. It follows that any statements made to government agents after the commission of the alleged crime are excluded from inspection under the rule. This construction is substantiated by the notes of the Advisory Committee which are to the effect that the theory underlying Rule 16 is that the government must not be allowed to keep in its exclusive possession evidentiary matter which but for its impounding by the government would probably have been accessible to the defendant."

phrase " 'by seizure or by process' " as a limitation on the material which is subject to inspection under the Rule, irrespective of whether it had been obtained from the defendant or from others.

The next case dealing with the problem, United States v. Chandler,[10] in arriving at the same result, relied upon the legislative history of the Rule.

The question reached a Court of Appeals for the first time in Shores v. United States.[11] The Eighth Circuit Court of Appeals held that pre-trial production of a defendant's confession was not within the scope of Rule 16.

The first reported case to deal with the question in this district was United States v. Cohen,[12] where Judge Dimock held that defendants' request for " 'all statements in writing or transcripts of testimony by defendants' " did not come within Rule 16.

Other cases denying pre-trial discovery of a defendant's statement or confession are United States v. Pete,[13] United States v. Martel [14] and Schaffer v. United States.[15]

This leads us to an analysis of the Peace case.[16] That case involved a motion for discovery and inspection of a

---

10. D.C.D.Mass.1947, 7 F.R.D. 365. At page 366, the court said:
"If any statements were made by the defendant after his arrest, it is obvious these were not material taken from him or belonging to him. * * * "

11. 8 Cir., 1949, 174 F.2d 838. The court cited and followed the Chandler case, 174 F.2d at page 844. In the Shores case, the defendant had given a 19-page written statement or confession to an F.B.I. agent and a local policeman after he had been taken into custody. At page 843, the court said:
"In a general sense, of course, a confession may be regarded as a paper or document 'obtained' from the defendant. But reading the language of the rule [Rule 16] in the light of the history involved in its formulation and in its context, we do not believe that such was its intended legal connotation and purpose here."

At page 844, the court said:
" * * * Rule 16 was neither intended nor regarded as having application to a confession. And in this connection, the observation is perhaps pertinent that a confession is not something of which there has been an appropriation from the defendant of any previous right of possession, nor is it in a legal sense anything 'belonging' to him. It is not the physical object but merely the contents which the defendant has supplied.
"All these considerations tend to persuade that in its present form Rule 16 does not create in the defendant a right before trial to demand a copy of his confession."

In dictum, at page 845 the court said that the court had the inherent power—

without any rule or statute—to require the Government to furnish the defendant with a copy of his confession before trial. This would be "a matter of judicial grace" to be granted when the court deems it necessary in "the interest of justice." As to this last point, it has been said that "many courts will in all likelihood disagree with Shores." The Scope of Criminal Discovery Against The Government (1954) 67 Harv.L.Rev. 492, 500.

12. D.C.S.D.N.Y.1953, 15 F.R.D. 269, 272.

13. D.C.D.C.1953, 111 F.Supp. 292, 293. This case involved a motion to require the Government to furnish defendant "with copies of statements or confessions made by defendant to the police." The court, however, referred, at page 293, to cases (not cited) in the District of Columbia which have permitted discovery of confessions and statements to the police where "the Court deemed it necessary in the interest of justice that defendant should have such discovery." Judge Goddard, in United States v. Scully, D.C.S.D.N.Y.1954, 15 F.R.D. 402, at page 403, said that the motion in the Pete case had been made under Rule 16.

14. D.C.N.D.N.Y.1954, 17 F.R.D. 326.

15. 5 Cir., 1955, 221 F.2d 17. At pages 19–20, Rives, C.J., for a unanimous court, said:
"A defendant's signed statement does not come within the purview of Rule 16 of the Federal Rules of Criminal Procedure as being a document in the custody of the defendant at the time the Government acquired possession of it."

16. D.C.S.D.N.Y.1954, 16 F.R.D. 423.

statement signed by defendant following his questioning by post-office inspectors at or about the time of his arrest. The court granted defendant's motion as coming within the scope of Rule 16.[17] In support of its conclusion, the court relied principally upon three cases: Bowman Dairy Co. v. United States,[18] United States v. Cohen,[19] and United States v. Iozia.[20]

I am of the opinion that the three cited cases did not pass on the issue whether Rule 16 permits pre-trial discovery of a defendant's statement given to the Government. In the Bowman Dairy case, defendants had been indicted for violating the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note. The question of the scope of Rule 16 was clearly not before the Supreme Court because "an agreed order" had been entered by the District Court and complied with by the Government with respect to defendants' request for "all books, papers, documents, or objects obtained from petitioners and obtained by seizure or process from others"; and the validity of that order was not in question before the Supreme Court, 341 U.S. at page 216, 71 S.Ct. at page 676. Defendants had also moved under Rule 17(c) for the production of certain other books, papers, documents, and objects "obtained by the Government by means other than seizure or process" that are relevant to the issues " 'whether or not they might constitute evidence with respect to the guilt or innocence of any of

the defendants.' "[21] The District Court had granted defendants' motion and denied the Government's motion to quash the subpoena. The Assistant Attorney General in possession of the requested documents had refused to comply with the court's order, and had consequently been adjudged in contempt. The Court of Appeals for the Seventh Circuit reversed the District Court, 185 F.2d 159. Certiorari was granted, 340 U.S. 919, 71 S.Ct. 357, 95 L.Ed. 664, "because of the importance of the scope of Rule 17(c) in federal practice." 341 U.S. at page 218, 71 S.Ct. at page 677.

The Supreme Court, in setting aside the contempt holding, called attention to the clause in defendants' subpoena " 'whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants' ", and described it as "a catch-all provision, not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up. The clause is therefore invalid." 341 U.S. at page 221, 71 S.Ct. at page 679.

While the applicability of Rule 16 was not before the Court,[22] the Court proceeded to discuss the relative scope and applicability of Rules 16 and 17(c). Thus, 341 U.S. at pages 218–219, 71 S. Ct. at page 678, the Court said:

> "It was intended by the rules to give some measure of discovery. Rule 16 was adopted for that purpose. It gave discovery as to docu-

---

17. The court denied that branch of defendant's motion which sought to obtain a copy of the confession of a codefendant.

18. 1951, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879.

19. D.C.S.D.N.Y.1953, 15 F.R.D. 269.

20. D.C.S.D.N.Y.1952, 13 F.R.D. 335.

21. 341 U.S. at pages 216–217, 71 S.Ct. at page 677. The subpoena was actually more detailed than indicated above. It called for documents and papers (a) presented to the grand jury, or (b) to be offered in evidence at the trial, or (c) rel-

evant to the charges in the indictment. Documents under "(c)" were demanded " 'whether or not they might constitute evidence.' "

22. See 64 Harv.L.Rev. 1011 (1951) Federal Courts—Rules of Criminal Procedure—Discovery Against the Government Does Not Extend To Documents Obtained Other Than By Seizure Or Process, where (at 1012) in commenting on the Bowman Dairy Co. case, it is said:

> "However Rule 17(c) is interpreted, the result reached in the instant case in denying discovery under this section appears proper."

ments and other materials otherwise beyond the reach of the defendant which, as in the instant case, might be numerous and difficult to identify. The rule was to apply not only to documents and other materials belonging to the defendant, but also to those belonging to others which had been obtained by seizure or process. This was a departure from what had theretofore been allowed in criminal cases. * * * Rule 16 provides the only way the defendant can reach such materials so as to inform himself.

"But if such materials or any part of them are not put in evidence by the Government, the defendant may subpoena them under Rule 17 (c) and use them himself. It would be strange indeed if the defendant discovered some evidence by the use of Rule 16 which the Government was not going to introduce and yet could not require its production by Rule 17(c). * * * No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary."

And at page 220 of 341 U.S., at page 679 of 71 S.Ct., the Court continued:

"It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. * * * Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials. United States v. Maryland & Virginia Milk Producers Ass'n., D.C., 9 F.R.D. 509. However, the plain words of the Rule are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the pro-

duction, inspection and use of materials at the trial."

At page 221 of 341 U.S., at page 679 of 71 S.Ct., the Court concluded:

"In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena."

It is highly significant that the only case cited by the Supreme Court in its exposition of Rule 17(c) was United States v. Maryland & Virginia Milk Producers Ass'n, 9 F.R.D. 509, a decision in the District Court for the District of Columbia by District Judge Holtzoff. Incidentally, Judge Holtzoff had been one of the most active members of the Advisory Committee which drafted the Federal Rules of Criminal Procedure.

The facts and the opinion in the Maryland & Virginia Milk Producers Ass'n case elucidate the point made by the Supreme Court. In that case, as in the Bowman Dairy Co. case, the prosecution was for an alleged violation of the Sherman Act. The defendants applied for a subpoena duces tecum, under Rule 17(c) directing the Government to produce for defendants' inspection all documents which the Government had obtained from any person who was not a party to the proceeding, that is, "the defendants seek a broad discovery of all documentary evidence that the Government has obtained in support of its case". 9 F.R.D. at page 510.

In denying the application for the subpoena, Judge Holtzoff, at page 510, made the following exposition of the scope of Rule 17(c):

"The purpose of this provision [Rule 17(c)] is a limited one. It is to make it possible to require the production before the trial of documents subpoenaed for use at the trial. Its purpose is merely to shorten the trial. It is not intended as a discovery provision.

"In this case the proposed subpoena duces tecum is not intended to be used to secure evidence to be introduced at the trial, but is intended to be employed as a broad discovery for the purposes of inspecting all the documentary evidence in possession of the Government and which the Government intends to use at the trial.

"It is well settled that in a criminal case, unlike a civil action, such a right of broad discovery does not exist. As I said before, Rule 17(c) was not intended to be a discovery provision, but merely a means to make a subpoena duces tecum returnable prior to the trial in order that time at the trial may be saved while documents are being examined and inspected."

Thus, the Bowman Dairy Co. case, in my view, does not constitute authority for holding that a defendant may obtain pre-trial discovery of his statement or confession under Rule 16.[23]

I do not read United States v. Cohen as supporting the proposition that a defendant is entitled to pre-trial discovery of his statement under Rule 16. In the Cohen case, defendants moved for pre-trial production under both Rule 16 and Rule 17(c). Item "3" of defendants' subpoena demanded [15 F.R.D. 272]:

" 'All books, records, documents, and papers of defendants relative to the indictment and the particular parts thereof relied on by the Government.' " The Government consented to an inspection of this item except as to "the particular

parts thereof relied on by the Government." The court denied the motion except to the extent consented to.

In the course of his opinion, Judge Dimock said that these items (except for the proviso noted) came within Rule 16. Another item in the subpoena (Item "5") requested, *inter alia,* "All statements in writing or transcripts of testimony by defendants or any witness relative to the indictment, and all exhibits in connection therewith." Significantly, in denying this branch of the motion, Judge Dimock pointed out, 15 F.R.D. at page 271, that "rule 16 and the pre-trial provisions of rule 17(c) are mutually exclusive"; that, 15 F.R.D. at page 272, the materials covered by Item "5" fall under Rule 17 (c) and would have to meet the criteria prescribed in the Iozia case, 15 F.R.D. at page 274; and that the rationale for his decision was that, 15 F.R.D. at page 273, "it is essential that each [of twenty-one defendants] have an opportunity to examine before trial documents which may be introduced against him but which he has never before seen."

■ The Iozia case, also cited in the Peace case, had been decided by Judge Weinfeld two years before the Peace case. In the Iozia case, defendants were indicted for income tax evasions. Defendants served subpoenas and also (1) under Rule 16 for permission to inspect, copy or photograph those documents which had been obtained from defendants or from third parties by seizure or by process; * and (2) under Rule 17(c) for an order directing the Government to produce and make available for inspection before trial other documents item-

---

23. Commentators who advocate a liberal discovery and inspection procedure in criminal cases have never read the Bowman case as holding that a defendant may obtain discovery and inspection of his confession or statement under Rule 16. See Pre-Trial Disclosure In Criminal Cases (1951) 60 Yale L.J. 626, 629; The Scope of Criminal Discovery Against The Government (1954) 67 Harv.L.Rev. 492. The

latter emphasizes (at pages 495–497) that Rule 17(c) should not be used as a discovery device but only as a subpoena procedure.

* The Government agreed to give defendants certain of these documents; and thus this branch of the motion was disposed of.

ized in the subpoena and allegedly in the Government's possession. The court denied this branch of the motion, except as to certain items, the inspection of which the court regarded as necessary for defendant's preparation for trial. In his exposition of Rule 17(c), which has since become classic, Judge Weinfeld laid down four requirements that must be met before pre-trial production would be ordered under Rule 17(c): (a) that the documents are evidentiary and relevant; (b) that they are not otherwise procurable by defendant reasonably in advance of trial by the exercise of due diligence; (c) that defendant cannot properly prepare for trial without such production and inspection in advance of the trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and (d) that the application is made in good faith and not intended as a fishing expedition.

Thus, I do not regard the Iozia case as dealing with the question of pre-trial discovery and inspection by a defendant of his statement under Rule 16.

Apart from United States v. Klein,[24] a brief opinion by Judge Sugarman, relying on the Peace case, and which granted defendant, under Rule 16, the right to inspect his unsigned statements transcribed by a Government stenographer, there is no other reported case cited by either party, or that independent research has discovered, which clearly holds that a defendant's confession or statement is within the pre-trial discovery provisions of Rule 16.[25]

■ Even if it be assumed *arguendo* that an oral statement made by the defendant to a Government representative qualifies, under the language of Rule 16, as "books, papers, documents or tangible

objects, obtained from or belonging to the defendant", inspection and discovery would necessarily be denied in the case at bar because the statutorily required showing of materiality and reasonableness is completely lacking.

■ Moreover, I do not regard as material the fact that defendant's oral statement, when transcribed stenographically by the Government, was not signed by the defendant. Where a defendant signs or initials the transcript or memorandum of his statement to the Government representative, his signing or initialing constitutes an implicit admission that he made the statement and that it is truthful. This implicit admission is, of course, not conclusive, for a defendant may later claim that he did not read or correct what he signed. The signing or initialing is thus only an additional item of evidence adding to the probative value of the statement itself as an admission, assuming that the statement does contain inculpatory matter.

■ Where the statement is sworn to, the admission that the statement is the defendant's and that it is truthful becomes explicit. Here again, a defendant is not foreclosed from repudiating it on the ground of coercion, fraudulent inducement, etc.

■ Does the act of signing or initialing or verifying the statement convert the statement into a document "obtained from or belonging to the defendant?" The statement is still the same document, physically and textually. What has been added by the signing, initialing, or verification is written evidence that the contents of the statement constitute a correct recording of truthful information given by a defendant to the Government. Whether signed or unsign-

---

24. S.D.N.Y.1955 (C 144–144, C 145–147; unreported).

25. 4 Barron and Holtzoff, Federal Practice and Procedure, (Rules Edition) pages 125–126:

"The defendant is not entitled to inspect confessions or statements made by him or his co-defendants although there are unreported cases to the contrary."

ed, sworn to or unverified, the statement *qua* statement is only written proof of what the defendant told the Government. The statement as a document was never "obtained from" the defendant, nor did it ever belong to the defendant. Thus, in our view, the act of initialing, signing, or verifying does not change the intrinsic nature of the statement and does not convert it into a book, paper, document or tangible object obtained from or belonging to defendant, within the meaning of Rule 16.

▪ It has been held that the phrase —obtained "by seizure or by process"— which appears in Rule 16, applies not only to materials obtained from persons other than a defendant, but also applies to " 'books, papers, documents or tangible objects, obtained from or belonging to the defendant.' " [26] If such an interpretation were correct, it could be argued that a voluntary statement made by a defendant to a Government agent was not obtained from the defendant "by seizure or by process" and, hence, it is outside the coverage of Rule 16.

I do not [27] subscribe to that interpretation for two reasons: (1) as a matter of grammatical construction, the words "by seizure or by process" modify and restrict only the words "obtained from others"; (2) the phrase "or obtained from others by seizure or by process" was inserted as a complete phrase for the first time in the third and final draft of Rule 16. At that time, the second draft already contained the antecedent phrase "obtained from or belonging to the defendant." The phrase "or obtained from others by seizure or by process"—as a complete phraseological unit—was sub-

stituted for the phrase "or constituting evidence in the proceedings," which latter phrase appeared in the second draft, but was deleted in the third draft. This genesis of the phrase "or obtained from others by seizure or by process" demonstrates that there was no intent to apply the restrictive words "by seizure or by process" to "books, papers, documents or tangible objects, obtained from or belonging to the defendant."

▪ In this consideration of the question whether defendant is entitled under Rule 16 to pre-trial discovery of the statement he gave to the Government, we must discuss the scope of application of Rule 17(c) because the latter rule—although entitled "Subpoena"—has been converted by some cases into a basis for pre-trial discovery. In my opinion, defendant is not entitled to pre-trial discovery of the statement under Rule 17(c).

Although the language of Rule 17(c) is broad, it must be read particularly with Rule 16 in mind. It should not be construed so that the carefully drawn limitations in Rule 16 become meaningless. In my opinion, Rule 17(c) should be interpreted as providing for the traditional type of trial subpoena, although for purposes of convenience and expediting a trial, it may be made returnable before the actual date of trial.

▪ The provision in Rule 17(c)— whereby the court has the discretion to direct the pre-trial production of subpoenaed records and papers and to permit their pre-trial inspection—should not be converted into a pre-trial discovery device. To do so would not only create a right expressly regulated by Rule 16, but would strip Rule 16 of all mean-

---

26. In United States v. Black, D.C.N.D. Ind.1946, 6 F.R.D. 270, 271, the court held that that phrase "is a limitation on the material which is subject to inspection under the rule irrespective of whether it has been obtained from the defendant or from others. In other words, that phrase qualifies the 'books, papers, documents or tangible objects' taken from a defendant as well as from others."

27. See Shores v. United States, 8 Cir., 1949, 174 F.2d 838, 844.

ing.[28] It is no justification for a subpoena under Rule 17(c) that defendant wants to make sure the story he tells at the trial is not impeached by any prior inconsistent statements he may have made earlier to the Government.[29]

28. As pointedly stated by Circuit Court Judge Major in his concurring opinion, United States v. Bowman Dairy Co., 7 Cir., 1950, 185 F.2d 159, 166:

"Why bother to go into court and obtain an order directing the government to make the limited production required under Rule 16 when much more could be obtained merely by filling in the blank space of a subpoena as provided for in Rule 17?"

In 4 Barron and Holtzoff, Federal Practice and Procedure (Rules Edition [1955 Pocket Part]) page 27, it is said:

"It was not intended by Rule 16 to give only a limited right of discovery and then by Rule 17(c) providing for subpoenas duces tecum to give right of discovery in broadest terms."

One of the members of the Advisory Committee which drafted the Federal Rules of Criminal Procedure has made it clear that Rule 17(c) was to provide "a subpoena practice which permits of a sifting in advance of trial of the documents actually to be offered in evidence." This rule was adopted because of the nature of federal practice where trials may "involve thousands of documents, and consume many months of trial," and the procedure under Rule 17(c) was adopted because it was the "only practicable solution." Dession, The New Federal Rules of Criminal Procedure: II (1947) 56 Yale L.J. 197, 222. See also The Scope of Criminal Discovery Against The Government (1954) 67 Harv.L.Rev. 492, 495–497.

In United States v. Carter, D.C.D.C. 1954, 15 F.R.D. 367, Judge Holtzoff (another member of the Advisory Committee) said, at page 369:

"Rule 17, however, is not intended as a discovery rule. The Advisory Committee in drafting the Rules indicated, by the manner in which Rule 16 is circumscribed and safeguarded, that only a narrow discovery should be permitted in criminal cases. Rule 17 relates to the issuance of subpoenas. Rule 17(c) deals with subpoenas duces tecum and is for the most part a restatement of preexisting law. It makes an addition, however, to the effect that the court *may* direct that a subpoena *duces tecum* be returnable prior to the trial, and *may* permit the documents and objects that have been subpoenaed to be inspected on the return day. *The purpose of this Rule was not to grant additional discovery*, but merely to facilitate and expedite trials, in order that a trial may not be delayed while counsel are examining voluminous documents produced in response to subpoena. It was contemplated that a Rule such as this would be particularly helpful in protracted trials in which there is a mass of documentary evidence, such as antitrust cases, mail fraud cases, and other similar proceedings. * * * *To construe Rule 17 as a discovery rule would render Rule 16 nugatory and meaningless and would defeat its limitations.* * * * A subpoena *duces tecum* may not be used for the purpose of discovery, either to ascertain the existence of documentary evidence, or to pry into the case of the prosecution." (Emphasis supplied.)

And at page 371, Judge Holtzoff said:

"Rule 17(c) is not a discovery rule but a device whereby a subpoena *duces tecum* in a criminal case may be made returnable prior to the trial, and the subpoenaed documents or objects made subject to inspection by counsel on the return day."

In United States v. Echeles, 7 Cir., 1955, 222 F.2d 144, where the court refused to permit defendants to procure from the Government the statement of a witness under Rule 17(c) the court said, at page 152: "Rule 17(c) is a statutory method of implementation of the sixth amendment", which provides that the accused shall enjoy the right to have compulsory process for obtaining witnesses in his favor.

In United States v. Mesarosh, D.C. W.D.Pa.1952, 13 F.R.D. 180, the court said, at pages 183–184:

"Rule 17(c) is not a discovery rule. Its purpose is to shorten the trial and to make it possible to require the production before the trial of documents subpoenaed for use at the trial."

In United States v. Ward, D.C.S.D.N.Y. 1954, 120 F.Supp. 57, Judge Goddard said, at page 59:

"But Rule 17(c) is not a discovery provision."

29. United States v. Schneiderman, D.C. S.D.Cal.1952, 104 F.Supp. 405.

It is the conclusion of this court that to order pre-trial discovery in the instant case would violate the letter and the spirit of Rule 17(c).

The interpretational difficulties in this field of the law stem primarily from the fact that there is a fundamental and unresolved conflict between two diametrically opposed philosophies. On one side are those who argue that the modern and desirable trend is toward a full pre-trial disclosure of all relevant facts. This school of thought points to the extremely liberal discovery practice under the Federal Rules of Civil Procedure, 28 U.S.C.A. and maintains that the limited discovery provisions of the Criminal Rules are the result of an undesirable cultural lag.[30] Thus, Judge Jerome N. Frank has declared:

> "In most jurisdictions, 'discovery' in criminal cases is denied; even where permitted it is narrowly limited. We should, I think, follow the practice now well settled in England where, before trial the prosecutor must disclose to the accused all evidence the prosecutor intends to offer." Frank, Courts on Trial [1949] 99.

Chief Judge Charles E. Clark[31] has recently declared:

> "One cannot approach the subject of discovery, without developing willy-nilly a philosophy of pleading and procedure, be it good or bad. * * * if the modern discovery as set out in the Federal Rules is to be accepted at all, it must be on the theory that the real purpose of modern pleading and its accessory devices,

including discovery, is to inform all parties and the court completely and at a very early stage of what the dispute is about, that it may be approached intelligently, a settlement arranged if at all possible; or a trial had as to the actual points at issue.

> "Now if one is going to accept the modern philosophy as exemplified by this approach to discovery, it is surely going to color the approach to the entire system of civil trials. *I may add that without doubt it is also going to permeate and shape vitally our approach to criminal trials* —though that is not a matter within my assignment this afternoon. The acceptance generally throughout our practice, however, of the philosophy which permeates the discovery procedure can well have most important and substantial consequences." (Emphasis supplied.)

Opposed to this school of thought are those who argue that there are distinguishing features present in a criminal proceeding which necessitate sharply limited discovery provisions. The advocates of this point of view emphasize that there is a greater danger of perjury in criminal cases, and that since the defendant in a criminal case can refuse to testify at all, broader discovery provisions in criminal cases would really mean broader discovery only of the prosecution's case. Thus, Judge Learned Hand, in United States v. Garsson,[32] wrote:

> "Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly

---

30. See Wigmore, Evidence, 3d Ed. 1940, 372 ff.; Dession supra, note 28; 64 Harv.L.Rev. (1951) 1011, 1012–1013; Pre-Trial Disclosure In Criminal Cases (1951) 60 Yale L.J. 626, 634, 646. Judge Weinfeld has adopted this philosophy in the Peace case.

31. Address of Chief Judge Charles E. Clark, A Modern Procedure for New York (Jan. 28, 1955). New York State Bar Association, Report of Proceedings of 78th Annual Meeting, page 51, at pages 54–55.

32. D.C.S.D.N.Y.1923, 291 F. 646, 649.

to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. * * * Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime."

Only two years ago, Judge Vanderbilt (chairman of the Advisory Committee at the time of the adoption of the Federal Rules of Criminal Procedure) writing for the majority in State v. Tune,[33] a case considering an application under a provision of the New Jersey rules identical with Rule 17(c), expressed his thoughts on the subject by quoting the above words of Judge Hand.

If the law with respect to pre-trial discovery of a defendant's statement in criminal cases is to be amended beyond the present provisions of Rule 16, that reform should rest upon something more solid than semantic subtlety. The subject is important to prosecutors, defendants and the community at large. The results of such amendment would be far-reaching. The question is controversial. Within the same district and circuit, judges and lawyers may well differ in their evaluation of the competing social policies that form the matrix of the problem, as well as in their appraisal of the practical factors involved in the administration and enforcement of the criminal laws.

It is well to remember that we are dealing with a subject that is peculiarly within the Supreme Court's rule-making and rule-changing power. Should the Supreme Court deem it appropriate to consider the question whether Rule 16 should be amended to permit fuller discovery, the Supreme Court has available the traditional method of affording an opportunity to Bench and Bar, including prosecutors and law school professors, to hammer out their differences on the anvil of debate before an Advisory Committee. Through such a medium, judicial creativity in modernizing another aspect of procedural criminal law could express itself effectively. In this particular area of the law, such a technique of reform is superior to the case-to-case decisional approach, with its concomitant uncertainty and conflicts, individualizing facts, and inarticulated basic assumptions of policy.

The words of Mr. Justice Cardozo are apposite:

"The analysis of social interests and their relative importance is one of the clews, then, that the lawyer and the judge must utilize in the solution of their problems. * * * When the legislature has spoken, and declared one interest superior to another, the judge must subordinate his personal or subjective estimate of value to the estimate thus declared. He may not nullify or pervert a statute because convinced that an erroneous axiology is reflected in its terms." Cardozo, *The Growth Of The Law* (1924) 94–95.

Motion denied.

33. 1953, 13 N.J. 203, 98 A.2d 881.

APPENDIX
to
Opinion of the Court

Motions under Rules 16 and 17(c), Federal Rules of Criminal Procedure, for pre-trial discovery and inspection or production of statements of a defendant or other person.

| Case | Items Sought | Rule Involved and Disposition | |
|---|---|---|---|
| | | 16 | 17(c) |
| United States v. Black, D.C.Ind. 1946, 6 F.R.D. 270; | Defendant's and other persons' statements to Government agents; | denied | |
| | F.B.I. reports; | denied | |
| | grand jury minutes | denied | |
| United States v. Chandler, D.C. Mass.1947, 7 F. R.D. 365; | Defendant's statement | denied | |
| United States v. Brumfield, D.C. La.1949, 85 F. Supp. 696; | Witnesses' statements | denied | denied |
| Shores v. United States, 8 Cir., 1949, 174 F.2d 838; | Defendant's confession | denied | |
| Fryer v. United States, 1953, 93 U.S.App.D.C. 34, 207 F.2d 134, certiorari denied, 1953, 346 U.S. 885, 74 S. Ct. 135, 98 L.Ed. 389; | Defendant's statements; | | denied |
| | Statements volunteered to the Government by witnesses or third persons relating to the case | | granted |
| United States v. Carter, D.C.D.C., 15 F.R.D. 367; | Statements of potential witnesses | | denied |
| United States v. Cohen, D.C.S.D. N.Y.1953, 15 F. R.D. 269; | All books, records, documents and papers of defendants relative to the indictment; | denied | denied |
| | All written statements or transcripts of testimony and alleged confessions of defendant and statements of witnesses relative to the indictment | denied | denied |

| | | | |
|---|---|---|---|
| United States v. Pete, D.C.D.C. 1953, 111 F. Supp. 292; | Statements or confessions made by defendant to the police | denied | |
| United States v. Martel, D.C.N.D. N.Y.1954, 17 F. R.D. 326; | All statements made to Government agents relating to defendants and procured from some ten persons, including the three defendants; | denied | |
| | Suitcase seized from a defendant | denied | |
| United States v. Scully, D.C.S.D. N.Y.1954, 15 F. R.D. 402; | Defendant's statements | | denied |
| United States v. Ward, D.C.S.D. N.Y.1954, 120 F. Supp. 57; | Income tax returns and books and records of third parties in the possession of the Government; | | denied |
| | Statements made by third parties | | denied |
| United States v. Peace, D.C.S.D. N.Y.1954, 16 F. R.D. 423; | Statement signed by defendant following his questioning by post-office inspectors at or about the time of his arrest; | granted | |
| | Written statement by a co-defendant | | denied |
| United States v. Wider, D.C.E.D. N.Y.1954, 117 F. Supp. 484; | Minutes of F. B. I. hearing; | granted ――――― not clear under which rule | |
| | F. B. I. report | | denied |
| Schaffer v. United States, 5 Cir., 1955, 221 F.2d 17; | Statements signed by defendant, which were used as partial basis for confession dictated by an F. B. I. agent and signed by defendant, said confession being introduced into evidence by the Government | denied | |
| United States v. Brown, D.C.N.D. Ill.1955, 17 F.R. D. 286; | Statements of third persons | | denied |
| United States v. Echeles, 7 Cir., 1955, 222 F.2d 144; | Statement of third person | | denied |
| United States v. Klein, S.D.N.Y., April 12, 1955, C 144–144, C 145–147—unreported | Statements made by defendant to an Internal Revenue Agent, transcribed by a Government stenographer | granted | |